AO 91 (Rev. 08/09)  Criminal Complaint            AUSA Theodore Cooperstein

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  16-017-FJL |
| Edward Geovani Gamez Guardado | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

FILED BY __CGA__ Deputy Clerk
Jan 29, 2016
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Fort Pierce, FL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___01/29/2016___ in the county of ___Indian River___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1073 | Unlawful flight to avoid prosecution |

This criminal complaint is based on these facts:

☐ Continued on the attached sheet.

_____
Complainant's signature

FBI Special Agent Jason Richards
Printed name and title

Sworn to before me and signed in my presence.

Date: Jan 29, 2016

_____
Judge's signature

City and state:  Fort Pierce, Florida

Frank J. Lynch, Jr., Chief U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Jason R. Richards, being duly sworn, depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since June 2003. I am currently assigned to the Federal Bureau of Investigation (FBI) Miami Division, Fort Pierce Resident Agency. I am responsible for and have participated in the investigation of, among other things, violent crimes, to include but not limited to, bank robbery, extortion, kidnapping, narcotics, gangs, firearms, and fugitive matters including unlawful flight to avoid prosecution.

2. This affidavit is based upon my own personal knowledge of the facts and circumstances surrounding the investigation, and information provided to me by other law enforcement officers and witnesses. This affidavit does not purport to contain all the information known to me about this case, but addresses only that information necessary to support a finding of probable cause for the issuance of a criminal complaint charging defendant EDWARD GEOVANI GAMEZ GUARDADO with Unlawful Flight to Avoid Prosecution, in violation of Title 18 United States Code, section 1073.

3. On 01/21/2016, defendant GUARDADO was involved in an incident, in Vero Beach, Florida, the Southern District of Florida, which led to him being charged on 01/24/2016, by the State of Florida, with First Degree Murder with a Firearm, in violation of Florida State Statute (FSS) sections 782.04(1)(a)1 and 775.087; and Attempted First Degree Murder with a Firearm FSS sections 782.05(1)(a), 777.04 and 775.087.

1

4. On 01/21/2016, Vero Beach Police Department responded to 1576 Highland Avenue, Vero Beach, Florida, in reference to a shooting. Upon arrival, VBPD officers witnessed two Hispanic males who had sustained gunshot wounds. One victim (V1) was lying outside the driver's side door and the other victim (V2) was lying in the grass area of the property. The officers began rendering first aid to both victims. Lawnwood Medical Center staff advised VBPD that V1 was pronounced dead at the medical center. Although sustaining multiple gunshot wounds, V2 survived.

5. On 01/21/2016, a witness (W1) observed a skinny Hispanic male, wearing a hat and light colored shirt, get out of a pickup truck that had closely followed the victims' white vehicle into the driveway at 1576 Highland Avenue, Vero Beach, Florida. The Hispanic male began firing shots toward the driver of the white vehicle. The driver of the pickup then returned to the pickup and left the scene. The witness described the pickup as a Dodge Ram, early 2000's model year; a two door extended cab truck with white lettering on the tailgate that was believed to say "Ram".

6. Another witness (W2) exited the residence of 1576 highland Avenue after hearing gunshots, and observed a black Dodge pickup truck with big tires, tinted windows and a gray front grill leaving the crime scene.

7. The deceased victim's girlfriend (W3) stated that her boyfriend had received threatening phone calls/texts from a male named GEOVANI GUARDADO. The calls/texts were threatening to do harm to V1. She advised that the threats were a direct result from V1 having an affair with GEOVANI GUARDADO's girlfriend.

8. Within an hour of the shooting, Vero Beach Police Department (VBPD) responded to

The Source Thrift Shop, 1239 16th Street, Vero Beach, Florida in an attempt to obtain video surveillance. A review of the business surveillance system identified a dark colored extended cab Dodge pickup with large tires and rims, as well as dark tinted windows. The truck also had a silver grill and silver tool box. Also observed in the video were a front license plate bracket and silver step bars. The truck in question appeared to be traveling at a rate of speed greater than surrounding traffic. The time stamp observed on the video shows the truck passing the business at 3:37:56 p.m. VBPD dispatch received the call on Highland Avenue at 3:38 p.m.

9. VBPD located a vehicle approximately 0.8 miles away from the crime scene, that matched descriptions provided by witnesses, as well as what was observed in the surveillance video provided by The Source Thrift Store. The location of the truck was consistent with the last known direction of travel of said vehicle.

10. The registered owner of the Dodge pickup truck (W4) advised that on 01/21/2016, GEOVANI GUARDADO claimed he had errands to do and left their worksite at approximately 2:00p.m. GUARDADO left the worksite driving the black Dodge pickup truck.

11. Another witness (W5) was interviewed and stated he works with GEOVANI GUARDADO at Florida Native Roofing in Palm Bay, Florida. On 01/21/2016, W5 was at work with GUARDADO in Palm Bay, Florida. W5 stated that GUARDADO claimed he had to leave work at 2:00 p.m. to go see a lawyer regarding an arrest. GUARDADO left work in the black Dodge pickup truck. At approximately 5:43 p.m., W5 received a phone call from GUARDADO who was in need of a ride. GUARDADO claimed the truck had broken down and he needed a ride home from the

3

area of the mall.

12. W5 and two other individuals went to the area of the mall to get GUARDADO. Upon picking GUARDADO up, he stated "let's go," as if to be in a hurry. W5 indicated to GUARDADO that he knew what GUARDADO was involved in, due to seeing a picture of the truck on the news. GUARDADO replied, "I am coming from there."

13. Another witness (W6) was with W5 when GUARDADO was picked up from the mall area. W6 stated GUARDADO appeared to be nervous as he got into the truck and stated "let's go". W6 stated he observed a hand gun in GUARDADO's waistband. After sitting in the truck, GUARDADO removed the gun from his waistband and placed it onto his lap. W6 described the gun as a 9 millimeter Beretta. Someone in the vehicle inquired about what was going on and GUARDADO stated, "I shot two people". No other questions were asked by anyone in the vehicle. W6 stated GUARDADO was wearing a yellow short-sleeved shirt, blue or black jean shorts, black tennis shoes and a black hat with a white design. W6 also advised that GUARDADO's full name is EDWARD GEOVANI GAMEZ GUARDADO.

14. Further investigation revealed that GUARDADO's father, who is currently in Honduras, is assisting GUARDADO with relocating to other family members' residences in North Carolina.

15. On 01/26/2016, VBPD requested FBI assistance in locating and arresting defendant GUARDADO.

16. Based on the foregoing facts, I submit that probable cause exists to believe defendant EDWARD GEOVANI GAMEZ GUARDADO, date of birth 09/29/1991, committed the offense of unlawful flight to avoid prosecution, in violation of Title 18 United States Code, Section 1073.

FURTHER YOUR AFFIANT SAYETH NAUGHT

Special Agent Jason R. Richards
Federal Bureau of Investigation

Sworn and subscribed to before me this ___ day of January, 2016.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

5